### PEOPLE v. VELD.

(Supreme Court, Appellate Division, Second Department. January 28, 1913.)

1. PERJURY (§ 33*)—EVIDENCE—SUFFICIENCY.

    Evidence *held* to support a conviction of perjury.

    [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 117–124; Dec. Dig. § 33.*]

2. CRIMINAL LAW (§ 438*)—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.

    On a trial for perjury in the giving by accused of false testimony at the preliminary examination of a third person, charged with assaulting a female in a private office, photographs of the office, not taken on the day of the alleged assault, were admissible to illustrate the location of the furniture of the room, as established by the witnesses for the prosecution.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 893; Dec. Dig. § 438.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 1137*)—APPEAL—QUESTIONS REVIEWABLE—OBJECTIONS —EXCEPTIONS.

The court on appeal, though authorized in the interests of justice to reverse a conviction for error of the trial court, though no exception was taken at the time, will not reverse a conviction for error in admitting evidence, acquiesced in by accused's counsel at the time of the trial, where counsel possessed experience and ability.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3007–3010; Dec. Dig. § 1137.*]

4. WITNESSES (§ 349*)—TESTIMONY OF ACCUSED—CROSS-EXAMINATION—EXTENT.

The rule that the court may in its discretion subject accused, offering himself as a witness, to cross-examination as to any specific act showing moral turpitude, thereby affecting his credibility, is subject to the qualification that the cross-examination must be directed to acts of accused himself, and not those of third persons amounting merely to accusations against him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1135–1139; Dec. Dig. § 349.*]

5. WITNESSES (§ 277*)—TESTIMONY OF ACCUSED—CROSS-EXAMINATION—EXTENT.

Where accused, occupying the position of probation officer, testified in his own behalf on his trial for perjury, questions whether charges had been made against him in relation to his behavior at the jail, or whether because of supposed misconduct he had been told to keep away from the jail, were not proper subjects of cross-examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 925, 979–983; Dec. Dig. § 277.*]

6. CRIMINAL LAW (§ 1170½*)—APPEAL—ERRONEOUS ADMISSION OF EVIDENCE.

Where accused gave answers favorable to himself to improper questions on cross-examination, but the prosecuting officer immediately by further questions insinuated that the answers were not true, or were open to suspicion, the error in permitting the cross-examination was prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3129–3155; Dec. Dig. § 1170½.*]

Appeal from Kings County Court.

Hartog Veld was convicted of perjury, and he appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

J. Grattan MacMahon, of Brooklyn (George R. Holahan, Jr., of Brooklyn, on the brief), for appellant.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

CARR, J. The defendant was convicted of the crime of perjury in the County Court of Kings County. He has appealed from the judgment of conviction.

He was a man of more than ordinary intelligence, 55 years of age, and married, and of previous good repute. At the time of his conviction he held a subordinate public office attached to the Magistrates' Court, in the borough of Brooklyn, and known as "probation officer," and he was likewise a clergyman officiating in some small congrega-

tion.  He received an indeterminate sentence to the state prison at Sing Sing for the minimum of two years and the maximum of seven. A certificate of reasonable doubt was granted by a Special Term of this court, and the defendant was admitted to bail pending the appeal. An opinion was written at Special Term.  It will be seen from an examination of that opinion that the claim of errors at the trial arose from three separate and distinct rulings.  The brief of the learned counsel for the appellant discusses each of these alleged errors in detail, but it contains no claim that the evidence in the case did not justify the conviction of the prisoner.

[1]  The prisoner was indicted for perjury alleged to have been committed at a preliminary examination held before Magistrate Kempner, in which E. G. Higginbotham, then a City Magistrate, was charged with having committed an assault upon the person of a young girl named Mary Hickey.  Miss Hickey had testified that the alleged assault upon her person took place in a private room of the Magistrates' Court, which room was used by Higginbotham, and the general layout of the room was described in her testimony.  She testified that there was in that room, on the day of the alleged assault, a couch, the greater part of which stood behind a desk and along a wall, and of which but a small part was visible to any one entering the room or standing in the body of the room.  She had gone to the court to complain about her mother, who had fallen into grievously bad habits, and she said that Higginbotham took her into the room, and escorted her behind the desk to the couch, where he bade her to sit down, and that after she had sat down upon the couch he likewise did so, and that in a few moments he kissed her on the mouth, and likewise put his hands under her clothes as far up as the knee, against her protest.  The defendant, Veld, was called on this examination as a witness for Higginbotham. He testified that he was present at the time of the alleged assault upon Miss Hickey, that he saw no assault, and that there was no couch whatever in the room located against the wall and behind the desk, and that he was standing in the doorway leading into the room and could see everything that happened, and that as a matter of fact the couch referred to stood out in the room alongside the desk, every part of it being visible to any one about to go into the room.  It was alleged that this testimony as to the location of the couch on the day of the alleged assault was untrue and made falsely by the defendant, Veld, and that it was material testimony on the examination then and there taken.

That it was material testimony there can be no controversy, and there is none.  It was testified to by the janitor and his assistant that for a very long period antecedent to the date of the alleged assault the couch in question had been located in the room just as described by the complainant, Miss Hickey.  Some days after the date of the alleged assault somebody moved the couch out from behind the desk, and placed it alongside the desk, where it became visible to every person coming into the room.  The janitor and his assistant swore that they did not move the couch, and that they did not know by whom it was moved, and that their attention to the fact of it having been moved

was called by Magistrate O'Reilly, who desired to know why it had been so moved. Magistrate O'Reilly, who frequently sat in the court in question, gave similar testimony to that of the janitor and his assistant. He likewise testified that, going to the courthouse to sit after the date of the alleged assault, he noticed that the couch had been removed from its customary position, and that he then called that fact to the attention of the janitor, and asked for an explanation, which the janitor was unable to give him. Daniel Quinn, a clerk in said court, testified that at the time of the day of the alleged assault the couch was located behind the desk, and was thereby screened to a large extent from the view of any one going into the room, and that it had been so located for a very long period of time theretofore. The people produced a witness, Wilcox, who testified that he was in company with the defendant, Veld, while the complaint against Higginbotham was undergoing examination, and that Veld admitted to him, and others who were in his company, on a trolley car, that the location of the furniture had been changed since the date of the assault, and that the people were going to useless labor in attempting to have photographs of the interior of the room in question.

Among the witnesses called by the defense was a clerk, Hasenflug, who likewise had testified for Higginbotham on the examination before Kempner; but even he, on cross-examination, admitted that on the date of the alleged assault the couch was located behind the desk, just as the witnesses for the people had testified. The defendant, Veld, took the stand and testified in his own behalf. The manner of his testimony shows that he was acutely intelligent. Towards the close of his examination, there is some testimony on his part tending to show that he was laboring under some misunderstanding as to the date of the alleged assault when he had been examined previously before Magistrate Kempner. If there were no serious errors of law at the trial, the facts should well sustain the conviction. This brings us to a consideration of the alleged erroneous rulings of law made at the trial.

[2] Certain photographs were offered by the people for the purpose of illustrating the location of the furniture in the room as testified to by the witnesses for the people. They had no other purpose than to make a picture of how the room stood in relation to its furniture, according to the story of Miss Hickey and the other witnesses for the people, on the day of the alleged assault. They were not proof of any actual conditions of the location of the furniture on that day, and were not so offered; for concededly they were not taken on the day of the alleged assault. Their only effect was to visualize the testimony offered by the prosecution as to the location of this couch, and which is practically without any contradiction save that of Veld himself; for even the testimony of the defendant's witness Hasenflug, who was a friend of Higginbotham and had testified in his behalf, is in complete harmony on that point with that given by the prosecution. I can see no merit in the objections to the use of the photographs.

[3] It is also urged that it was grave error to read in the evidence at the trial of this case the information which had been sworn to by Miss Hickey, and which formed a part of the preliminary examina-

tion in the charges against Higginbotham. On this trial Veld was represented by counsel of maturity and large experience in the criminal courts. Turning to the record on appeal, we find that the prosecuting officer offered in evidence the entire record of the preliminary examination—

"not for the purpose of indicating that any of the charges therein are true, but for the purpose of showing that such a proceeding was pending in the City Magistrate's Court, * * * and the basis upon which that action proceeded at that time and place."

The court thereupon asked:

"Any objection."

The record shows that the defendant's counsel answered as follows:

"I think, if your honor please, that we are verbally going into it and I have no objection."

When the prosecuting officer read the information in question, no objection whatever was made to it on behalf of the defendant, Veld, nor was any further objection made thereafter on this point.

It is argued by the appellant that it was error for the people to read in evidence, on the cross-examination of the defendant's witness Hasenflug, extracts from his testimony as a witness on the preliminary examination. Referring to the record, we find the circumstances under which this was done. Here, again, there was no objection whatever made by defendant's counsel to this course of conduct, and the matter so read in evidence is not printed in the record on this appeal, and we have no means of knowing whether it was in any way prejudicial to the defendant, or, if so, whether it went any further than to contradict the evidence of Hasenflug, given on his direct examination; it being conceded that the record so read from was a true transcript of the testimony given by Hasenflug in the preliminary examination against Higginbotham. Now, it is true that we may, in the interests of justice, reverse a conviction for error committed by the trial court, though no exception was taken at the time. Such a course is adopted sometimes in very close cases, where some reasonable doubt may be entertained as to the propriety of the verdict. It would, however, be intolerable if a counsel of experience and ability should stand by in court without objecting to an offer of evidence, and then, after a conviction of his client, should assert that the judgment was vitiated by the admission of said evidence, which, if technically incompetent, was certainly acquiesced in at the time of the trial.

We are now brought to a consideration of what seem to be the more important errors made at the trial, which occurred on the cross-examination of the defendant, Veld. The record shows a cross-examination of the defendant in part as follows:

"Q. Do you know a man named Max Raphael? A. Yes; I know the name, but I don't know the first name. Q. Did you ever take any money from Max Raphael?

"Defendant's Counsel: I object, if your honor please.

"A. Not for myself.

"Defendant's Counsel: I object to the question, as his character is not in issue.

"Assistant District Attorney: I think we will have to classify that question with the forty-seventh proposition of Euclid.

"The Court: He has gone on the stand, and taken the double burden of not only being the defendant, but also a witness. I overrule your objection.

"Defendant's Counsel: Exception.

"Q. Did you ever take any money from him for somebody else? A. Yes. Q. For whom? A. For Halperin Bros. Q. Who are they? A. Knitting mills people; they have a knitting mill. Q. Did you give the money to him? A. Yes, sir; I have got receipts from him. Q. How much? A. I think it was $7. Q. When? A. That was some time ago. This boy had been in their employ and— Q. Do you remember when you gave the money? A. Yes, sir; a day or two after the boy brought it to me he was arrested— Q. Do you remember what that was? A. I don't remember the day. I know the boy was arrested for stealing some ties, and the complaining witness came, and of course— Q. Who authorized you to take any money from him in behalf of Halperin? A. That's part of my duty as probationary officer; seeing how restitution— Q. Did anybody authorize you to do it? A. I think the magistrate said— Q. What magistrate—Higginbotham? A. I am not sure which magistrate was there that day. Q. Did Mr. Halperin authorize you to collect any money for him? A. Yes; Mr. Halperin's brother came. Q. What is his name? A. I don't know the first name. Q. Did you turn over to his brother? A. Yes; and I have receipts for it. Q. Do you know when you did it? A. I don't know the date now. Q. This boy was discharged? A. Yes. Q. Do you know Max Steinberg? A. Max Steinberg; yes, I know him. Q. You took some money from him? .A. No, sir. Q. Didn't you take $5 from Max Steinberg when he was in Raymond street jail? A. No, sir. Q. And give $2 of it to the dentist? A. No, sir. Q. Did you keep it all? A. I did not get any of the money. Q. You did not get any of the money? A. Not a penny .of it. He complained about toothache, and I told the warden. Q. And you went and got a dentist? A. In the warden's office I telephoned for a dentist. Q. And a dentist came, and you took $5 from Steinberg? A. I beg your pardon; Steinberg gave the dentist $5. Q. Those charges were preferred against you? A. No, sir; there were no charges preferred against me. Q. Weren't you ordered to keep out of the jail for misconduct in jail down here by the commissioner of corrections? A. No, sir.

"Defendant's Counsel: I object to these things as entirely immaterial.

"The Court: Objection overruled.

"Q. This Steinberg and another man who has been sent to Elmira— A. Steinberg was indicted for arson. 'Q. Do you know Charles Gutman? A. That is the man referred to; he and Steinberg tried to frame up something. Q. And the charge against you was false? A. Exactly. The late Commissioner Barry exonerated me, and told me to perform my duty as probationary officer. Q. And the charges against you, you say, were false? A. Yes. Q. You have an opinion about that? A. Commissioner Barry told me to go back to my duty, and be there on Saturday, and any day that I did not perform my duty as probationary officer."

[4] It is true that a defendant who offers himself as a witness in his own behalf is subject, in the discretion of the court, to cross-examination as to any specific act of his life which may tend to show moral turpitude and thus affect his credibility as a witness; for, as was said by Finch, J.:

"A party who seeks to testify in his own behalf must take the risk if there are vulnerable joints in his harness." People ex rel. v. Oyer & Term., County of N. Y., 83 N. Y. 461. .

But this rule is subject to the qualification that the questions must be directed to acts of the witness himself, and not those of other persons which amount merely to accusations or charges. In People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302, a conviction was reversed be-

cause the defendant, as witness on his own behalf, had been asked whether he had not been arrested on a charge of bigamy, and it was said by the Chief Judge, in writing for the Court of Appeals:

"The discretion which courts possess, to permit questions of particular acts to be put to witnesses for the purpose of impairing credibility, should be exercised with great caution, when an accused person is a witness on his own trial. He goes upon the stand under a cloud; he stands charged with a criminal offense, not only, but he is under the strongest possible temptation to give evidence favorable to himself. His evidence is therefore looked upon with suspicion and distrust, and if in addition to this he may be subjected to a cross-examination upon every incident of his life, or every charge of vice or crime which may have been made against him, and which have no bearing upon the charge for which he is being tried, he may be so prejudiced in the minds of the jury as frequently to induce them to convict, upon evidence which otherwise would be deemed insufficient."

[5, 6] Whether charges had been made against the defendant in relation to some behavior of his at the jail, or whether, because of supposed misconduct, he was told to keep away from the jail, were not proper subjects of inquiry on this trial. It is urged, however, that, as the defendant gave answers to these questions which were favorable to himself, no prejudice resulted, and the error should be disregarded. Nolan v. Brooklyn City R. R. Co., 87 N. Y. 63, 68 (41 Am. Rep. 345). But the record shows that the prosecuting officer immediately, by further questions above set forth, insinuated very plainly that these answers were either not founded on fact, or were open to suspicion. This seems a plain instance of "overtrying a case," in which the prosecuting officer transcended the proper bounds, and in which the trial court failed to exercise a proper discretion. The meanest criminal is entitled to be tried according to the law. When the manner of trial violates the law, then a conviction is reversed, not through sympathy with the defendant, but because the only way in which the law can be preserved is by enforcing it strictly for a defendant as well as against him.

The judgment of conviction of the County Court of Kings County should be reversed, and a new trial ordered. All concur.